IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

LAURIE A. FACSINA; and
CHRISTOPHER KRASKA
    Plaintiffs,

                                CASE NO.: 21-CA-000039
                                (formerly 4:21-CV-10031-JLK)

v.

ISLAMORADA, VILLAGE OF ISLANDS d/b/a
PLANTATION YACHT HARBOR MARINA,
a municipal corporation; LISA WATTS,
individually,

        Defendants.
_____/

## SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiffs, LAURIE A. FACSINA ("Mrs. Facsina") and

CHRISTOPHER KRASKA ("Mr. Kraska") (collectively "Plaintiffs"), by and through their

undersigned attorneys, and files this, their Second Amended Complaint against the Defendants,

ISLAMORADA, VILLAGE OF ISLANDS d/b/a PLANTATION YACHT HARBOR MARINA

("Islamorada" or "Marina") and LISA WATTS ("Watts") and in support thereof states as follows:

## JURISDICTION, VENUE, AND PARTIES

1.     This is an action for damages in excess of $30,000.00, exclusive of interest,

attorneys' fees and costs. *See* Fla. Stat. § 26.012(2)(a).

2.     This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193

because Plaintiffs claims arise out of Defendants' conducting, engaging in, and carrying on

business in Florida. Moreover, Defendant Marina contract provides public accommodations in

Florida, and Defendants' tortious acts occurred within Florida.

3.     Venue lies in Monroe County, Florida because the cause of action accrued in

Monroe County and Defendant is located in Monroe County, Florida.

4.      Mrs. Facsina, wife of Mr. Kraska, is a 60 year old, disabled individual residing in the City of Twinsburg, Summit County, Ohio and was located in Key Largo in Monroe County, Florida at the time of incidents alleged herein.

5.      Mr. Kraska, husband to Mrs. Facsina, is an individual residing in the City of Twinsburg, Summit County, Ohio and was located in Key Largo in Monroe County, Florida at the time of incidents alleged herein.

6.      Defendant, Islamorada, is a municipality incorporated under the laws of the State of Florida and is the owner/operator of the Plantation Yacht Harbor Marina.

7.      Islamorada operates: (a) Plantation Yacht Harbor Marina; (b) Founder's Park; and (c) other parks, beaches, tennis courts, dog park, nature walk and fitness park a public boat ramp, a gas station, restrooms and green spaces- all accessible to the public for a fee. *See* Founders Park Map, attached hereto and incorporated within as Exhibit "1."

8.      Defendant Watts is an individual residing in Monroe County, Florida, is employed by Islamorada, at all times material hereto, was the duly appointed Head Dock Master working for the Plantation Yacht Harbor Marina, and is otherwise *sui juris*.

9.

**Background**

10.     Mrs. Facsina, along with her husband, Mr. Kraska, moored their 40-foot trawler in slip number T66 at the Marina since 2012 pursuant to a written contract executed between the Parties.

11.     As a resident of the Plantation Yacht Harbor Marina, Mrs. Facsina and Mr. Kraska were entitled to the following amenities and services advertised by the Marina:

   a.   Commitment "to ensuring that all visitors and residents with disabilities, are able to access and use our programs, services, and activities;"

b. Private Marina bathrooms and showers;

c. Boat slips which provide guests with metered electric and water, sewage pump out, and sales of unleaded and diesel fuel;

d. Free Wi-Fi;

e. Boat ramp;

f. Dedicated parking area;

g. Temporary courtesy daytime dockage for up to ten Islamorada resident boats during special events;

h. Tiki-style pavilion with grills and an ample trailer parking area;

i. Free access to the facilities and activities at the adjacent Islamorada Founders Park, which includes "a pristine beach, tennis courts, dog park, nature walk and fitness park;

j. Convenient access to the Olympic sized pool at Founder's Park;

k. Coin laundry on-site;

l. Comcast cable;

m. Convenient pump out at each slip;

n. Department of Environmental Protection "Clean Marina" designation

12. Additionally, the Marina was subject to a minimal changes in water height due to the fact that the marina was located on the bay side of Islamorada, which enabled Mrs. Facsina to access her vessel despite her physical disabilities.

13. Additionally, the 45-acre Founders Park which Mrs. Facsina and Mr. Kraska enjoyed convenient access to is the center of the Islamorada park system, offering sports programs,

recreational programs and facilities for aquatics, golf, soccer, tennis, volleyball, swimming, and basketball, which was particularly convenient for Mrs. Facsina given her physical limitations.

14.     The following events also occurred at the facilities: large charitable public special events such as: Friends of the Pool Aquatic Ball, Bougainvillea Ball, July 4th Celebration & Fireworks, Florida Keys Youth and Masters Swim Meets, Special Olympics Swim Meet, Islamorada Chamber of Commerce Holiday Festival and Island Fest, Upper Keys Rotary Nautical Flea Market, University of Miami Sports Hall of Fame & Habitat for Humanity Fishing Tournament, Bay Jam as well as several additional community entertainment amphitheater events, and a wide range of numerous smaller special events.

15.     In 2012, Mrs. Facsina suffered a catastrophic incident which left her with permanent physical limitations. In addition to Mrs. Facina's physical limitations, Mrs. Facsina also suffers from: HTN (hypertension), PAF (paroxymal atrial fibrillation) and Raynaud's disease.

16.     Thereafter, Mrs. Fascina qualified as a disabled individual under  28 CFR 35.104 and 42 U.S.C. 121131.

17.     Moreover, pursuant to Title III of the ADA 1990, an "individual with a disability" is a person who has physical or mental impairment that substantially limits one or more major life activity.

18.     Mrs. Facsina was and continues to be prescribed a Service Dog as a result of her qualified disabilities.

19.     Title III provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

20.     In 2012, Defendant was made aware of Mrs. Facsina's disabilities and provided documentation regarding same.

21.     Immediately thereafter, Defendant accommodated Mrs. Facsina by providing her with the access code to the entry-coded secured handicapped bathroom, which was not only clearly marked for handicap use, but was also the only facility at the Marina that was fully equipped with accommodations in both the shower and the restroom.

22.     In 2017, Marina appointed a new dock master, Lisa Watts, who changed the access code and did not notify Mrs. Facsina of the change.

23.     On December 25, 2017, Christmas day, after arriving at the Marina late in afternoon, Mrs. Facsina attempted to use the handicap accessible facilities shower, only to find that the code had been changed.

24.     On December 26, 2017, Mrs. Facsina inquired as to the code change with "Derrick" a dock hand, who replied he could no longer provide her with such code, as this had been mandated by the new Head Dock Master, Lisa Watts. Derrick further elaborated that in fact, at this time, only the marina employees and the Sheriff's department were to have access to the handicapped bathroom and the access code.

25.     On January 2, 2018, Mrs. Facsina approached the Head Dock Master, Lisa Watts regarding access to the handicapped facilities.

26.     Ms. Watts admitted that she was aware that Mrs. Facsina had prior access to the entry code locked handicapped restroom and Mrs. Facsina's disabilities. Regardless, Ms. Watts proceeded to illegally interrogate Mrs. Facsina as to the legitimacy of Mrs. Facsina's disabilities, in violation of the ADA.

27.     Ultimately, Ms. Watts arbitrarily and illegally refused to provide Mrs. Facsina with the code required to access the Marina's handicapped bathroom and shower.

28.     Understandably, Mrs. Facsina was humiliated and embarrassed by the extremely personal and medical interrogation undertaken by Ms. Watts. Furthermore, Ms. Watts has no legal right to interrogate Mrs. Facsina's about her private medical information.[1]

29.     Mrs. Facsina had no alternative but to leave the Marina and head back north to her home in Twinsburg, Ohio. This action ruined her Christmas Holidays.

30.     Mrs. Facsina was discriminated against and deprived of her rights under applicable law. 42 U.S.C. § 12132 entitled "Discrimination" provides as follows: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by any such entity."

31.     Additionally, the ADA requires that as occupancy load increases, so must the number of ADA accessible restrooms and at least one ADA restroom per gender.

32.     The Marina failed to comply with the foregoing ADA requirements.

---

[1] Marina would only be permitted to inquire as to the basis of Mrs. Facsina's disability if allowed under the FHA, however, the Marina is not an entity which fails within the ambit of the FHA.

33.    On January 16, 2018, Mrs. Facscina mailed a certified return receipt letter to the Head Dock Master, Watts, explaining the situation and requesting that Ms. Watts reevaluate her decision to unlawfully restrict Mrs. Facsina's access to the ADA facilities.

34.    Despite the foregoing letter, Ms. Watts continued to negligently, willfully and illegally restrict Mrs. Facsina's access to the ADA compliant facilities. The access code was still denied.

35.    Their decision was based on personal visual observations of Mrs. Facsina in an attempt to determine her medical condition and her disabilities. This may not be perceived by a lay person and further violates her rights under ADA.

36.    The restroom/shower are listed on the marina's "Particulars of the marina" page, under the amenities, along with the spa, swimming pool, and launch ramp. On the first page of the "ADA Accessibility Statement" it specifies; Islamorada Village of Islands, is committed to ensuring that all visitors and residents, including visitors and residents with disabilities, are able to access and use all our programs, services and activities.

37.    The "Village" had a designated ADA Coordinator and a 504 Coordinator. None of these services were afforded to Mrs. Facsina.

38.    Under the ADA alternative methods must be provided if such methods are readily unavailable., in compliance with accessibility regulations. The defendant's failed to provide proper disabled access, much more denied access, violating Mrs. Facsina's civil rights under the ADA.

39.     The marina is a Public Accommodation facility or business and meets the public accommodation standard under Florida law and the ADA;  the marina is a public establishment to which ADA applies.

40.     As a direct result of the Defendant's actions, Mrs. Facsina and Kraska, both have suffered a dramatic decrease in their ability to function on a day-to-day basis.

41.     The Plantation Yacht Harbor Marina (Islamorada Village of Islands); (Founder's Park), are public accommodation facilities or businesses. Both the beach and marina are accessible to the public by paying fees. It has a public boat ramp and transient services for docking. Pool fees are charged to the public. Food and beverages are served on a stand on the beach to the general public. It is considered a place of recreation with tennis courts and swimming lessons offered to the general public for fees. The TIKI Hut on the marina is open to the public. The "ship store" is open to the public which sells merchandise and goods or services provided by the public accommodations or  by those who use a public accommodation.

42.     The stated above, defines the marina as a private facility whose operations affect commerce and fall within the twelve (12) categories which make it a public accommodation.

43.     In the introduction of the Plantation Yacht Harbor Marina brochure, it further states "inviting marina for village residents and the general local boating population." This facility also holds special events for which it charges the general public attending.

44.     The Plaintiff's agreement of the slip is not analogous to a lease for a dwelling nor is it a permanent lodging. It is a rental establishment or transient lodging (in which ADA applies), it is not a residence of greater permanency nor is it a residential area.

45.     The Islamorada has agreements, not leases, that are made readily available to members of the general public on a first come first serve basis, as they become available. Therefore, because the agreements in principle are offered to the general public from time to time, the marina remains a public accommodation.

46.     As a direct result of the Defendants actions, the Plaintiff's had to vacate the dock at the marina and incurred expenses per towing of the boat to another marina. They have had to relocate numerous times at different marinas thus incurring expenses from towing to lodging, to where it sits today in the State of Virginia.

47.     Plaintiff, Chris Kraska, is a re-known worldwide artist (www.chriskraska.com). He is extremely popular in the Florida Keys. Most of his art work, which entails underwater photography and research, was performed from his boat docked at the Plantation Yacht Harbor Marina.

48.     Upon having to vacate the dock per the Defendant's actions, it altered the availability and access to his work product. This affected their income and reputation as an artist. He would often attend charity benefits and donate his work.

49.     Included  is the Consortium Claim for Plaintiff Chris Kraska. This has added extreme stress and affected both Plaintiff's health. His "personal life" has been affected.

50.     Plaintiff Mrs. Facsina, holds a professional license in Florida and as a direct result of Defendant's actions, has had a substantial loss of revenue and loss of clients.

51.     The Florida Commission on Human Rights (hereinafter "Commission") thoroughly investigated Mrs. Facsina's complaint in 2019, under case number FCHR No. 201915451.

52.     After a complete investigation, the Commission concluded, "That there is reasonable cause to believe that an unlawful practice occurred. The complainant showed she was denied the full use and enjoyment of the respondent's premises, that her medical conditions qualify as disabilities under FCHR, and that the denial was related to her disability." It further elaborates that the respondent meets the definition of a public establishment under FCHR. Respondent failed to meet it's burden of proving a legitimate, nondiscriminatory reason for doing so." See Exhibit '2'.

53.     The entire incident described above, was memorialized by the Plaintiff personal photographs and videos. All of the Defendant's statements are directly contradicted by the video evidence and witness testimony.

54.     The Defendant's blatant disregard of the implications to the Plaintiff's and despite recent court rulings regarding the Constitutional implications of discrimination of the disabled, the Defendant's neglected to create and implement specific procedures or training with regard to these interactions.

55.     Plaintiff's have fully complied with the notice provision and timely notified all Defendants named in this Complaint, as required by Florida Statute 768.28(6)(a).

56.     Due to the trauma experienced by Plaintiff's Mrs. Facsina and Kraska as a result of the intentional, deliberate, willful, and wanton disregard for a disabled person by the Defendant's regarding this incident, Plaintiff's and their family have suffered severe emotional distress.

57.     Defendant's actions following the incident, specifically lying about the circumstances leading to the discrimination in an effort to avoid liability, was willful, wanton, and intentional.

58.     As a direct and proximate result of Defendant actions, Mrs. Facsina suffered from severe emotional distress, physical anguish, and will consequently require counseling.

59.     All requirements prior to the filing of the instant action have occurred or have been waived.

## COUNT I - VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132 AGAINST MARINA

60.     Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

61.     Count 1 is a claim under Title II of the ADA, 42 U.S.C. §§ 12131-12165.

62.     Part A of Title II, 42 U.S.C. §§ 12131–12134, addresses public services provided by public entities. A "public entity" means "any State or local government," or "any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1)(A)–(B).

63.     The term "qualified individual with a disability" means: an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2).

64.     Mrs. Facsina is a qualified individual with disabilities within the meaning of the ADA.

65.     Defendant, Marina is a public entity within the meaning of the ADA.

66.     The regulations implementing the ADA require that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

67.     Public entities "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8).

68.     Title II prohibits discrimination based on disability, specifically, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

69.     As public entities and instrumentalities of the state, Defendants are prohibited from providing "a qualified individual with a disability with an aide, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii).

70.     Marina has discriminated against Mrs. Facsina in violation of the ADA on the basis of Mrs. Facsina's disabilities by denying Mrs. Facsina medically necessary services in the community as a reasonable accommodation, resulting in Mrs. Facsina incurring significant damages and emotional distress.

71.     It is undisputed that Title II permits a private cause of action for injunctive relief or money damages. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 750 (2017).

72.     Mrs. Facsina is entitled to an award of reasonable attorney's fees and costs in accordance with 42 U.S.C. § 12133.

**WHEREFORE**, the Plaintiffs demand judgments against the Defendants for monetary

damages, court costs, attorney's fees, and for such further relief as the Court deems just and proper.

**COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, § 760.08 ("FCRA") PROHIBITION AGAINST DISCRIMINATION [OR SEGREGATION] IN PLACES OF PUBLIC ACCOMMODATION AGAINST ISLAMORADA**

73.    Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

74.    Section § 760.08, Florida Statutes (2016), provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of    any place of public    accommodation without    discrimination    or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." The term "[p]ublic accommodations " is defined as "places of public accommodation , lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments." § 760.02(11), Fla. Stat. (2016). Each  of  the  following  establishments  "which  serves  the public is a place of public accommodation within the meaning" of subsection (11):…(d) Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment ." *Okposio v. Barry Univ.*, 252 So. 3d 1290, 1291 (Fla. 1st DCA 2018).

75.    Defendant Islamorada includes (a) Plantation Yacht Harbor Marina; (b) Founder's Park; and (c) other parks, beaches, tennis courts, dog park, nature walk and fitness park a public boat ramp, a gas station, restrooms and green spaces- all accessible to the public for a distinct fee.

76.    Islamorada's Plantation Yacht Harbor Marina slips provide guests with metered electric and water, sewage pump out, Wi-Fi, and sales of unleaded and diesel fuel. The facility

includes a boat ramp and dedicated parking area, as well as temporary courtesy daytime dockage for eight to ten Islamorada resident boats during special events. There is a tiki-style pavilion with grills and an ample trailer parking area. Marina guests also have access to the facilities and activities at the adjacent Islamorada Founders Park.

77.     Plaintiff was an invitee of Defendants, in a place of public accommodation, and was denied access to the handicapped restroom facilities after approximately five years of use, in violation of Section § 760.08, Florida Statutes (2016).

78.     This denial based on the observations of Watts, a lay person employed by Islamorada.

79.     As a result of the denial, Plaintiffs were damaged; specifically, Plaintiffs were forced to move boat ramps at their expense, Kraska lost income, and the Plaintiffs suffered mental anguish and humiliation.

**WHEREFORE**, the Plaintiffs demand judgments against the Defendants for compensatory damages, court costs, attorney's fees, and for such further relief as the Court deems just and proper.

### COUNT III CLAIM FOR NEGLIGENCE AGAINST DEFENDANT WATTS

80. Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

81. As Dockmaster at the Marina, Ms. Watts had a duty to provide disabled individuals, like Mrs. Facsina, access to handicapped restroom facilities upon request.

82.   Ms. Watts failed to fulfill her duty to Mrs. Facsina.

83. Ms. Watts actions and omissions caused Plaintiffs to leave the Marina and incur significant damages.

**WHEREFORE**, the Plaintiffs demand judgments against the Defendants for compensatory damages, court costs, and for such further relief as the Court deems just and proper.

## COUNT IV:  BREACH OF CONTRACT AGAINST MARINA

84.     Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

85.     In April 2012, Mrs. Facsina and Kraska entered into a dockage agreement with Marina.

86.     Marina materially breached the boat slip contract by failing to fulfill ordinary duties and obligations required, including: ensuring that all visitors and residents, including visitors and residents with disabilities, are able to access and use all of Islamorada's programs, services and activities- specifically access and use of a handicap accessible bathroom with shower and providing AD compliant alternative methods for Plaintiffs.

87.     Plaintiffs performed all of their obligations, including submitting payment for Islamorada's services per the boat slip contract.

88.     Mrs. Facsina and Kraska have directly and proximately suffered damages by Marina's material breach, including but not limited to: trauma as a result of the intentional, deliberate, willful, and wanton disregard for a disabled person and Mr. Kraska's income and reputation as an artist.

**WHEREFORE**, the Plaintiffs demand judgments against the Defendants for compensatory damages, court costs, attorney's fees, and for such further relief as the Court deems just and proper.

**COUNT V: BREACH OF THE IMPLIED COVENENAT OF GOOD FAITH AND FAIR DEALING AGAINST ISLAMORADA**

89. Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

90. Plaintiffs and Defendant are parties to a written contract as described above.

91. The contract is ambiguous about the permissibility of Defendant's refusal to allow Plaintiff access to the handicap accessible facilities.

92. Defendants, through a conscious and deliberate act, failed or refused to discharge contractual responsibilities that unfairly frustrates the purpose of the agreement entered between the parties and disappoints the Plaintiffs' expectations;

93. Defendant's breach deprives the Plaintiff of the contract's benefits.

94. Plaintiffs have suffered damages as a result of Defendant's improper conduct.

**COUNT VI: LOSS OF CONSORTIUM**

95.     Plaintiffs re-allege paragraphs 1 through 59 as set forth herein.

96.     That the Plaintiff, Mrs. Facsina, has at all times material hereto, been and is presently the lawful wife of the Plaintiff, Kraska.

97.     That as a direct and proximate result of the injuries sustained by the Plaintiffs, Kraska, suffered loss of his wife's society, companionship and consortium and will so suffer in the future.

**WHEREFORE**, the Plaintiffs demand judgments against the Defendants for compensatory damages, court costs, attorney's fees, and for such further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 12th day of August, 2021, a true and correct copy of the foregoing was served upon Defendant, Marina's counsels, Jeffrey L. Hochman, Esq., and

Jonathan H. Railey, Esq.,    at the following email addresses identified for serve:

hochman@jambg.corn, garrido@jambg.com, railey@jambg.com.

Lauren Turner, Esq.
FLBN: 121707
L. Turner Law, P.A.
P.O. Box 292621
Davie, Florida 33329-2621
T: (561) 294-3045
Primary Email:    lauren@lturnerlaw.com
Secondary Email: info@lturnerlaw.com

and

Adam M. Ludwin, Esq.
Ludwin Law Group, P.A.
85 S.E. 4th Avenue, Suite 108
Delray Beach, Fl 33483
Tel: 561.455.4455
Email: adam@ludwinlaw.com
Email: admin@ludwinlaw.com
*Attorneys for Plaintiffs*

# EXHIBIT A





*State of Florida*
# Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*

**Ron DeSantis**
*Governor*

4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*

**Latanya Peterson**
*Chair*
**Michelle Wilson**
*Executive Director*

FCHR No. 201915451

Laurie A. Facsina                           **COMPLAINANT**
c/o Gregory A. Moore, Esquire
Gregory A. Moore, P.A.
7951 Riviera Boulevard, Suite 201
Miramar, Florida 33023

Islamorada, Village of the Islands, d/b/a      **RESPONDENT**
Plantation Yacht Harbor Marina
c/o Milton R. Collins, Esquire
Weiss, Serota, Helfman, Cole & Bierman
1200 North Federal Highway, Suite 312
Boca Raton, FL 33432

## NOTICE OF DETERMINATION: REASONABLE CAUSE

The Florida Commission on Human Relations has determined that there is reasonable cause to believe that an unlawful practice occurred. A copy of the determination is attached.

Complainant may request an administrative hearing with the Division of Administrative Hearings by filing a Petition for Relief within 35 days of the date the determination was signed by the Executive Director. A blank Petition for Relief form is enclosed with Complainant's notice. It may be beneficial for Complainant to seek assistance from legal counsel prior to filing the petition. Alternatively, Complainant may file a civil action in a court of law within one year of the date the determination was signed by the Executive Director.

During the following 35 days, you are invited to participate in a conciliation session in order to reach a just resolution of this matter. A Commission mediator will be contacting the parties with additional details about our conciliation services.

Engaging in conciliation does not, however, extend the 35-day limitation period for filing a Petition for Relief. The determination of reasonable cause will become final if Complainant does not file a Petition for Relief within 35 days, and the Commission will dismiss the complaint.

The parties named in the determination may inspect the records and documents, in the custody of the Commission, which pertain to the determination. Please contact the Commission's Customer Service Office if you wish to request copies.

**COMMISSIONERS**

| Dr. Donna Elam | Mario Garza | Al McCambry | Latanya Peterson, *Chair* |
|---|---|---|---|
| *Port Richey* | *Lakewood Ranch* | *Lynn Haven* | *Fleming Island* |
| | **Jay Pichard** | **Gilbert Singer** | |
| | *Tallahassee* | *Tampa* | |

I HEREBY CERTIFY that a copy of the foregoing Notice of Determination was mailed to the above-named addressees this ____11th____ day of ____June____, 20__20__, by U.S. mail.

By: _____
      Clerk of the Commission

Complainant provided medical documentation to FCHR which showed she has one or more qualifying disabilities under the FCRA. Complainant stated she requested continued access to the coded facilities she had been using, but Respondent denied her request. Complainant stated she did not provide the medical documentation requested by Respondent because she had already provided it in 2012 when she was first given the access code. Complainant also stated she could not use the other marina facilities because the one with the coded access was the only one which had the ADA compliant shower that she required.

Complainant has shown that she was denied the full use and enjoyment of Respondent's premises; that her medical conditions qualify as disabilities under FCRA; and that the denial was related to her disability. Notwithstanding Respondent's claims otherwise, Respondent meets the definition of a public establishment under FCRA for the following reasons: On its webpage, Respondent's amenities list includes a tiki-style social pavilion and access to facilities and activities at the adjacent park. Likewise, in its own brochure Respondent lists: public beach access; swimming pool; tennis courts; dog park; nature walk; and work-out area – all of which are located in Founder's Park. This brochure also states that Respondent is located in Founder's Park.

Respondent articulated reasons it denied Complainant continued access to the disabled bathroom and shower, but Respondent failed to meet its burden of proving a legitimate, nondiscriminatory reason for doing so. Respondent did not sufficiently explain why the addition of a new wheelchair bound resident would prevent continued disabled restroom/shower access by Complainant; Respondent failed to present evidence to support why the new dockmaster determined Complainant was no longer handicapped; and Respondent also did not provide evidence regarding the new policies, procedures or requirements by which everyone would need to comply when requesting to use the coded disabled facilities. As such, there is reasonable cause to believe that Respondent discriminated against Complainant by denying her continued access and the full use and enjoyment of its facilities.

On the basis of the report from the Commission's Office of Employment Investigations and recommendation from the Commission's Office of General Counsel, pursuant to the authority delegated to me as Executive Director of the Florida Commission on Human Relations, I have determined that reasonable cause exists to believe that an unlawful practice occurred.

DATED: June 11, 2020

Michelle Wilson, Executive Director



*State of Florida*
# Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*

4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*



**Ron DeSantis**
*Governor*

**Latanya Peterson**
*Chair*
**Michelle Wilson**
*Executive Director*

FCHR No. 201915451

Laurie A. Facsina                                    **COMPLAINANT**
c/o Gregory A. Moore, Esquire
Gregory A. Moore, P.A.
7951 Riviera Boulevard, Suite 201
Miramar, Florida 33023

Islamorada, Village of the Islands, d/b/a            **RESPONDENT**
Plantation Yacht Harbor Marina
c/o Milton R. Collins, Esquire
Weiss, Serota, Helfman, Cole & Bierman
1200 North Federal Highway, Suite 312
Boca Raton, FL 33432

## DETERMINATION: REASONABLE CAUSE

Complainant filed a complaint of discrimination alleging that Respondent violated the Florida Civil Rights Act of 1992 (FCRA). The Florida Commission on Human Relations (FCHR) has completed its investigation of this matter. Complainant alleged Respondent discriminated against her by withholding access to the full use and enjoyment of its public accommodation facilities based on her disability (physical). Respondent stated it does not fall under the statutory definition of a public accommodation, but if it did, it still provided Complainant equal access to its facilities.

It is undisputed that during the period of 2014-2017, Respondent permitted Complainant to use an entry-coded handicap accessible bathroom. Complainant used this bathroom until Respondent changed the key code sometime in late 2017.

Respondent claimed the code was changed because: (1) a new resident (who was in a wheelchair) was going to begin living at the marina in 2018 and reasonable rules needed to be established; (2) the new dockmaster informed Complainant that only handicapped persons would be permitted to use the coded facilities; and (3) the new dockmaster wanted Complainant to provide Respondent with proof of her disability if she wished to continue using the coded disabled facilities. Respondent also stated there were other non-coded handicapped facilities on its premises to which Complainant had access and could use.

**COMMISSIONERS**

| **Dr. Donna Elam** | **Mario Garza** | **Al McCambry** | **Latanya Peterson,** *Chair* |
|---|---|---|---|
| *Port Richey* | *Lakewood Ranch* | *Lynn Haven* | *Fleming Island* |
| | **Jay Pichard** | **Gilbert Singer** | |
| | *Tallahassee* | *Tampa* | |






## *State of Florida*
## Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*

**Ron DeSantis**
*Governor*

4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*

**Latanya Peterson**
*Chair*
**Michelle Wilson**
*Executive Director*

FCHR No. 201915451

Laurie A. Facsina                                            **COMPLAINANT**
c/o Gregory A. Moore, Esquire
Gregory A. Moore, P.A.
7951 Riviera Boulevard, Suite 201
Miramar, Florida 33023

Islamorada, Village of the Islands, d/b/a                    **RESPONDENT**
Plantation Yacht Harbor Marina
c/o Milton R. Collins, Esquire
Weiss, Serota, Helfman, Cole & Bierman
1200 North Federal Highway, Suite 312
Boca Raton, FL 33432

## DETERMINATION: REASONABLE CAUSE

Complainant filed a complaint of discrimination alleging that Respondent violated the Florida Civil Rights Act of 1992 (FCRA). The Florida Commission on Human Relations (FCHR) has completed its investigation of this matter. Complainant alleged Respondent discriminated against her by withholding access to the full use and enjoyment of its public accommodation facilities based on her disability (physical). Respondent stated it does not fall under the statutory definition of a public accommodation, but if it did, it still provided Complainant equal access to its facilities.

It is undisputed that during the period of 2014-2017, Respondent permitted Complainant to use an entry-coded handicap accessible bathroom. Complainant used this bathroom until Respondent changed the key code sometime in late 2017.

Respondent claimed the code was changed because: (1) a new resident (who was in a wheelchair) was going to begin living at the marina in 2018 and reasonable rules needed to be established; (2) the new dockmaster informed Complainant that only handicapped persons would be permitted to use the coded facilities; and (3) the new dockmaster wanted Complainant to provide Respondent with proof of her disability if she wished to continue using the coded disabled facilities. Respondent also stated there were other non-coded handicapped facilities on its premises to which Complainant had access and could use.

**COMMISSIONERS**

| **Dr. Donna Elam** | **Mario Garza** | **Al McCambry** | **Latanya Peterson,** *Chair* |
|---|---|---|---|
| *Port Richey* | *Lakewood Ranch* | *Lynn Haven* | *Fleming Island* |
| | **Jay Pichard** | **Gilbert Singer** | |
| | *Tallahassee* | *Tampa* | |

Complainant provided medical documentation to FCHR which showed she has one or more qualifying disabilities under the FCRA. Complainant stated she requested continued access to the coded facilities she had been using, but Respondent denied her request. Complainant stated she did not provide the medical documentation requested by Respondent because she had already provided it in 2012 when she was first given the access code. Complainant also stated she could not use the other marina facilities because the one with the coded access was the only one which had the ADA compliant shower that she required.

Complainant has shown that she was denied the full use and enjoyment of Respondent's premises; that her medical conditions qualify as disabilities under FCRA; and that the denial was related to her disability. Notwithstanding Respondent's claims otherwise, Respondent meets the definition of a public establishment under FCRA for the following reasons: On its webpage, Respondent's amenities list includes a tiki-style social pavilion and access to facilities and activities at the adjacent park. Likewise, in its own brochure Respondent lists: public beach access; swimming pool; tennis courts; dog park; nature walk; and work-out area – all of which are located in Founder's Park. This brochure also states that Respondent is located in Founder's Park.

Respondent articulated reasons it denied Complainant continued access to the disabled bathroom and shower, but Respondent failed to meet its burden of proving a legitimate, nondiscriminatory reason for doing so. Respondent did not sufficiently explain why the addition of a new wheelchair bound resident would prevent continued disabled restroom/shower access by Complainant; Respondent failed to present evidence to support why the new dockmaster determined Complainant was no longer handicapped; and Respondent also did not provide evidence regarding the new policies, procedures or requirements by which everyone would need to comply when requesting to use the coded disabled facilities. As such, there is reasonable cause to believe that Respondent discriminated against Complainant by denying her continued access and the full use and enjoyment of its facilities.

On the basis of the report from the Commission's Office of Employment Investigations and recommendation from the Commission's Office of General Counsel, pursuant to the authority delegated to me as Executive Director of the Florida Commission on Human Relations, I have determined that reasonable cause exists to believe that an unlawful practice occurred.

DATED: June 11, 2020

Michelle Wilson, Executive Director