**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-10092-Civ-GAYLES/TORRES

LAURIE FACSINA and
CHRISTOPHER KRASKA,

    Plaintiffs,

v.

ISLA MORADA, VILLAGE OF ISLANDS d/b/a
PLANTATION YACHT HARBOR MARINA, and
LISA WATTS

    Defendants.

_____/

**REPORT & RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS**

This matter is before the Court on Islamorada, Village of Islands' d/b/a Plantation Yacht Harbor Marina ("Islamorada") and Lisa Watts' ("Ms. Watts", and collectively with Islamorada, "Defendants") Motion to Dismiss the Second Amended Complaint filed by Laurie Facsina ("Ms. Facsina") and her husband Christopher Kraska ("Mr. Kraska").   [D.E. 4].   Plaintiffs responded to the Motion on September 29, 2021, [D.E. 5], to which Defendants replied on October 6, 2021.   [D.E. 74]. Therefore, Defendants' Motion is now ripe for disposition. [1]   After careful consideration of the motion, response, reply, and relevant authority, and for the

---

[1] On April 4, 2022, the Honorable Darrin P. Gayles referred all pre-trial matters to the Undersigned Magistrate for proper disposition.   [D.E. 14].

1

reasons discussed below, Defendants' motion should be **GRANTED in part and DENIED in part**.

## I.  BACKGROUND

Ms. Facsina and Mr. Kraska bring this action against Defendants Islamorada, a municipality incorporated under the laws of Florida, and Ms. Watts, an employee of Islamorada, for the alleged discriminatory actions of Plantation Yacht Harbor Marina (the "Marina") against Ms. Facsina.  According to the Complaint, Islamorada, which owns and operates the Marina, is guilty of disability-related discrimination against Ms. Facsina in breach of Title II of the Americans with Disabilities Act ("ADA") and Florida's Civil Rights Act.

The Complaint alleges that Ms. Facsina suffers from multiple conditions that qualify her as a disabled individual under the ADA.  Ms. Facsina and Mr. Kraska are a married couple from Ohio who, since 2012 and pursuant to a written contract, rented a slip space for their 40-foot trawler boat at the Marina.[2]  The Marina is located adjacent to Founders Park, a 45-acre complex, also owned and operated by Defendant Islamorada, that is comprised of parks, beaches, sports fields, and other recreational spaces that are opened to the general public.  Marina guests are provided with access to the facilities and activities offered by Founders Park. Because of her physical limitations, in 2012, the Marina provided Ms. Facsina with

---

[2] The Complaint is not clear about this, but it appears that Plaintiffs visited the Marina multiple times per year and used their vessel for lodging and boarding during these trips.

2

the access code to one of the Marina's accessible bathrooms. This is the bathroom that Ms. Facsina used whenever she was at the Marina from 2012 to 2017.

Sometime in 2017, the Marina appointed a new Head Dock Master, Ms. Watts, who changed the bathroom's door access code without notifying Ms. Facsina. Ms. Facsina learned about this change on December 25, 2017, when she attempted to use the accessible bathroom to take a shower but her old code did not work. The following day, Ms. Facsina inquired about the accessible bathroom's door code with a Marina employee. This employee told her that, by direct order of Ms. Watts, he could no longer share the access code with her because from that point on only Marina employees and the Sheriff's department were to have access to that particular bathroom.

A week later, on January 2, 2018, Ms. Facsina approached Ms. Watts to discuss her access code to the accessible bathroom. According to Plaintiffs, Ms. Watts admitted that she was aware of Ms. Facsina' prior use of the bathroom and her disabilities. Yet, after expressing doubts as to the legitimacy of Ms. Facsina's disabilities and questioning her about her physical limitations, Ms. Watts refused to provide her with the password to the accessible bathroom. Plaintiffs assert that this incident ruined their Christmas Holidays because they had no alternative but to leave the Marina and return to their home in Ohio.

Plaintiffs bring this action against Islamorada for violation of Title II of the ADA (Count I), violation of the Florida Civil Rights Act ("FCRA") (Count II), breach of contract (Count IV), and breach of the implied covenant of good faith and fair dealing (Count V). Plaintiffs also assert a negligence claim against Ms. Watts

(Count III) and a loss of consortium claim (Count VI). Defendants have moved to dismiss all counts in the Complaint.

## II. APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The

Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

Defendants have moved to dismiss all of the counts in the Complaint pursuant to Fed. R. Civ. P 12(b)(6). Specifically, Defendants argue that: (1) the discrimination counts (Counts I and II) should be dismissed because Plaintiffs have failed to offer facts establishing that Ms. Facsina is indeed disabled, that she made a specific demand for an ADA accommodation, and that the Marina is a place of public accommodations for the purposes of the FCRA; (2) the negligence claim against Ms. Watts (Count III) fails because Plaintiffs cannot plead the existence of the necessary duty of care, and even if a duty of care existed, Florida law exempts Ms. Watts, a government employee, from individual liability; (3) the breach of contract and the implied covenant of good faith (Counts IV and V) cannot survive because Plaintiffs failed to attach a copy of the alleged contract to their pleading; and (4) the loss of consortium claim (Count VI) fails because Plaintiffs have not properly pleaded a predicate tort supporting this derivate claim. We address each of these arguments below.

### A. *The ADA and FCRA Claims are Well-Pled (Counts I and II)*

"'[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).'" *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1274 (11th Cir.), *opinion vacated on reh'g,* 21 F.4th 775 (11th Cir. 2021) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). To plead a cause of action under the ADA, "a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)). An individual qualifies as disabled under the ADA when he or she can show: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such a impairment (as described in paragraph (3))." *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019) (citing 42 U.S.C.A. § 12102(1)).

Similarly, the FCRA provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." Fla. Stat. § 760.08. "[D]isability-discrimination claims

6

under the FCRA are analyzed using the same framework as ADA claims.") *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

Plaintiffs have sufficiently pleaded Counts I and II. Among other things, the Complaint alleges that: Ms. Facsina suffered a terrible incident in 2012 that left her with permanent physical limitations ([D.E. 1-2, ¶ 15]); that Mrs. Facsina was and continues to be prescribed a service dog as a result of her qualified disabilities (*id.* ¶ 18); and that she has been deemed disabled by the Florida Commission on Human Relations ([D.E. 1-3][3]). While this might not constitute conclusive proof that Ms. Facsina is indeed covered by the ADA, it is sufficient to plead disability status for the purposes of a Rule 12(b)(6) motion.

Plaintiffs also expressly allege that, in 2012, they provided the Marina with documentation reflecting the extent of Ms. Facsina's disabilities, and that the Marina provided her with the access code to the accessible bathroom as an accommodation for her physical limitations. [D.E. 1-2, ¶¶ 20-21]. In addition, the Second Amended Complaint asserts that, in 2017, Ms. Watts refused to provide Plaintiffs with access to the bathroom in question, despite acknowledging that she was aware of Ms. Facsina's physical limitations (*id.* ¶¶ 26-27), and that, in 2018, Plaintiffs wrote a demand letter to Ms. Watts insisting on getting access to the bathroom to no avail. *Id.* ¶ 33.

Finally, Plaintiffs articulate sufficient factual matter to support a *prima facie* finding that the Marina constitutes a place of public accommodations for the purposes

---

[3] "Exhibits attached to a Complaint are properly considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006).

of the FCRA. The Complaint alleges that the Marina is part of the Islamorada's park system, which offers multiple recreational activities to the general public, and conducts social events open to the general public including, Friends of the Pool Aquatic Ball, Bougainvillea Ball, July 4th Celebration & Fireworks, Florida Keys Youth and Masters Swim Meets, Special Olympics Swim Meet, Islamorada Chamber of Commerce Holiday Festival and Island Fest, Upper Keys Rotary Nautical Flea Market, among others. *Id.* ¶¶ 13-14.

Defendants overlook these allegations and conclude that the Second Amended Complaint fails to plead a plausible violation of the disability anti-discrimination laws. Defendants argue that "[i]n the absence of facts establishing that Facsina was disabled under the FCRA or the ADA at the time of the December 2017 encounter at issue, Facsina cannot establish a prima facie case of disability discrimination." [D.E. 4, p. 7]. Not so. Plaintiffs are not required to articulate detailed facts supporting the claim of disability as if a heightened pleading standard applied. Nor do they have to prove their case at the pleading stage of the proceedings. Rather, all that is required from Plaintiffs at this stage is to plead sufficient factual matter in the complaint to support a reasonable inference of liability. *See Probill, Inc. v. Cumbie L. Off. Automation Consulting*, Inc., No. 12-80821-CIV, 2013 WL 2158431, at *3 (S.D. Fla. May 17, 2013) ("All the Plaintiffs need to do at the pleading stage is comply with Rule 8(a), which they have clearly done."). To allege a plausible disability, a plaintiff need only allege that a physical or mental impairment/condition substantially limits her life activities. *See, e.g., Hyppolite-Marriott v. Fla. Dep't of Veterans Affs.*, No. 0:21-CV-60352-RS, 2021 WL 5529871, at *5 (S.D. Fla. Nov. 2,

2021) (denying motion to dismiss where plaintiff sufficiently alleged a disability from high-risk pregnancy); *Cerrato v. Durham,* 941 F. Supp. 388, 393 (S.D.N.Y. 1996) (noting that "[w]hile ... transitory and non-chronic impairments are not covered by the ADA . . . the extent and severity of the limitations plaintiff faces are factual questions not properly decided on a motion to dismiss."); *Patterson v. Xerox Corp.,* 901 F. Supp. 274, 278 (N.D. Ill. 1995) (noting that it was impossible to ascertain the duration of the plaintiff's condition on a motion to dismiss).

Here, Plaintiff's complaint has satisfied this plausibility threshold. The complaint alleges that Ms. Facsina suffered trauma in 2012 that left her with permanent physical limitations ([D.E. 1-2, ¶ 15]); that Mrs. Facsina was and continues to be prescribed a service dog due to her physical impairments (*id.* ¶ 18); and that she has been deemed disabled by the Florida Commission on Human Relations ([D.E. 1-3]). These are factual allegations that, if proven, may be deemed sufficient to qualify as disabled by the trier of fact. Defendant may be able to challenge or impeach these allegations but a motion to dismiss is not the proper vehicle to do so. *See, e.g., Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007) ("whether or not a medical condition rises to the level of a disability is to be made on an individualized case-by-case basis."); *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 151 (2d Cir. 1998) (same).

Construed in the light most favorable to the Plaintiffs, the factual allegations supporting Counts I and II are sufficient to survive Defendants' Motion to Dismiss. Whether Plaintiffs will be able to prove these facts with admissible evidence at summary judgment is a different question that we do not consider at this juncture.

9

*See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1298 (11th Cir. 2007) ("We are at the pleading stage, not the proof stage"); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 892 (N.D. Ohio 2003) ("[Plaintiff] does not need to prove [its claim] at the pleading stage. While it may fail at summary judgment or at trial, it must, at this stage, only allege a 'short and plain statement of the claim showing that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)). Accordingly, Defendants' Motion to dismiss Counts I and II should be DENIED.

### B. *Plaintiffs Cannot State a Claim of Negligence (Count III)*

In Count III, Plaintiffs bring a claim of negligence against Ms. Watts, the Head Dock Master. To state a claim of negligence, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Defendants move to dismiss this count arguing that Plaintiffs have not, and cannot, establish the existence of a duty of care and, as such, their negligence claim is deficient. We agree.

Plaintiffs allege that, by refusing to share the bathroom's access code with Ms. Facsina, Ms. Watts breached her "duty to provide disabled individuals, like Mrs. Facsina, access to handicapped restroom facilities upon request." [D.E. 1-2, ¶ 81]. As Defendants rightly point out, however, no such duty exists under common law, and Plaintiffs do not cite to any authority providing otherwise. Rather, to the extent that Plaintiffs may be able to identify a duty to provide disabled individuals with access to handicapped bathrooms, this is a duty of care that arises solely from

10

the statutory mandate of the ADA, a proposition that Plaintiffs expressly concede in their Response. [D.E. 5, pp. 12-13] (reiterating that 42 U.S.C. § 12112(b)(5)(A) "states that the failure to accommodate disabilities is an affirmative duty," and conceding this is the duty of care upon which Plaintiffs base their negligence claim).

Notably absent from Plaintiffs' Response, is any authority addressing, let alone rebutting, Defendants' conclusive assertion that the ADA cannot provide Plaintiffs with an independent duty of care sufficient to establish tort liability on Ms. Watts personally. Indeed, federal courts in this Circuit and others have repeatedly dismissed negligence claims in disability discrimination cases predicated on no other duty of care than the one that arises from the ADA's mandate. *See e.g., White v. NCL Am., Inc.*, No. 05-22030-CIV, 2006 WL 1042548, at *6 (S.D. Fla. Mar. 8, 2006) (dismissing negligence claim because "Plaintiff may not use the ADA's standards alone to impose a duty on the Defendants. . . . Rather, to do so a plaintiff must identify a recognized duty at common law, independent of the ADA standards."); *Curley v. Lifestream Behav. Ctr., Inc.*, No. 5:15-CV-183-OC-30PRL, 2015 WL 4664452, at *4 (M.D. Fla. Aug. 6, 2015) ("Plaintiff cannot rely on an alleged violation of the ADA to support his negligence claims."); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020) (observing that "there is no independent duty of care established by the ADA."); *Strojnik v. Landry's Inc.*, 2019 WL 7461681, at *6, 2019 U.S. Dist. LEXIS 223873, at *15 (S.D. Tex. Dec. 9, 2019) (disabled plaintiff failed to allege negligence because the "allegations do not support the existence of a duty outside that imposed by the ADA."); *see also Brennan v. Thomas*, 780 F. App'x 813, 822 (11th Cir. 2019) (individuals "are not subject to liability under Title II of the

11

ADA."); *Kruger v. Jenne*, 164 F. Supp. 2d 1330, 1337 (S.D. Fla. 2000) ("The ADA does not provide for individual liability."). A review of the pleadings reveals that, here, Plaintiffs are using the ADA's standards alone to contrive a duty of care upon which they can anchor their negligence claim against Ms. Watts. However, as noted earlier, this is not supported under the law.

Furthermore, and putting duty of care aside, we also agree with Defendants' claim that Plaintiffs failed to plead an injury that was plausibly caused by Ms. Watts alleged negligent actions. To establish an injury, a plaintiff "must establish a cause and effect relationship ... between the alleged tortious conduct and the injury—that is, cause in fact (or actual or but-for causation)—as well as the foreseeab[ility] of the conduct in question producing the alleged harm—i.e., proximate causation." *Marabella v. NCL (Bahamas), Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020) (quotation marks and citations omitted) (alterations in original). Plaintiffs allege that "[a]s a direct result of [Ms. Watts'] actions, Mrs. Facsina and Kraska, both have suffered a dramatic decrease in their ability to function on a day-to-day basis." [D.E. 1-2, ¶ 40]. However, nothing in the complaint shows how this inability to function on a daily basis was plausibly caused by Ms. Watts' refusal to share the access code to the bathroom with Ms. Facsina. Indeed, it is unclear how Ms. Watts' actions injured Plaintiffs at all. Plaintiffs allege that Ms. Watts' denial of the access code left them with no other option but to leave the Marina and return to Ohio. *Id.* ¶ 29. Yet, by Plaintiffs' own assertions, Ms. Facsina first learned that the bathroom code had been changed on December 25, 2017. And she stayed at the Marina for an entire week thereafter, presumably making use of other Marina bathrooms or the one

12

in her vessel. Faced with this Plaintiffs do not allege that Ms. Facsina was denied access to all the bathrooms onsite, that this one particular bathroom was the only accessible bathroom at the Marina,[4] or how the denial of the access code created some sort of hazard for Ms. Facsina's health. In light of this deficit in factual, non-conclusory allegations connecting Plaintiffs' alleged injuries to Ms. Watts actions, we cannot find that Plaintiffs have sufficiently alleged an injury that plausibly resulted from Ms. Watts alleged acts. Although Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see also Langbehn v. Pub. Health Tr. of Miami-Dade Cnty.*, 661 F. Supp. 2d 1326, 1341 (S.D. Fla. 2009) (dismissing negligence claim because the injury allegation "is conclusory, lacks any factual nexus, and is devoid of any supporting facts so as to survive a motion to dismiss."); *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-23874-CIV, 2018 WL 1916614, at *5 (S.D. Fla. Apr. 23, 2018) (dismissing negligence claim supported by "conclusory allegations that [Plaintiff's] injuries 'were caused solely by and due wholly to Defendant's negligence, carelessness, [and] recklessness[.]" . . . That type of pleading will not survive a motion to dismiss.").

In sum, Plaintiffs cannot plead an independent duty of care necessary for the imposition of tort lability on Ms. Watts, and they fail to plausibly allege that they suffered injury as a result of Ms. Watts' alleged negligence. As such, Defendants' Motion to dismiss Count III should be GRANTED.

---

[4] Plaintiffs only state that this bathroom was the only bathroom at the Marina that was fully equipped with accommodations in both the shower and restroom spaces.

### C. *The Breach of Contract Claim is Sufficiently Pled (Count IV)*

In Count IV Plaintiffs bring a breach of contract claim against Islamorada. To state an action for breach of contract, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages." *Perry v. Schumacher Grp. of Louisiana*, 809 F. App'x 574, 582 (11th Cir. 2020) (citing *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). Defendants advance a single argument against the breach of contract claim; namely, that the breach of contract claim must be dismissed because Plaintiffs have failed to attach a copy of the contract to their Second Amended Complaint. [D.E. 4, p. 13]. This conclusion is unpersuasive at this stage of the proceedings.

As noted earlier, at the pleading stage, Plaintiffs are only required to allege sufficient factual matter to allow this Court to draw a reasonable inference that Islamorada is plausibly liable for a breach of contract; Plaintiffs have done so here. First, the Complaint expressly alleges that Plaintiffs had docketed their vessel at the Marina since 2012 pursuant to a written dockage agreement. [D.E. 1-2, ¶¶ 10, 85]. Second, the Complaint claims that pursuant to that contract, Plaintiffs were entitled to, among other things, the use of amenities and services, including "private Marina bathrooms and showers[.]" *Id.* ¶ 11. The Complaint also asserts that the parties performed under this contract for at least five years (*id.* ¶ 77); that denying Ms. Facsina access to the accessible bathroom constitutes a breach of the agreement (*id.* ¶ 86); and that because of such breach Plaintiffs have suffered damages (*id.* ¶ 88).

At the pleading stage, these allegations are sufficient to survive Defendants' Motion to Dismiss with or without attaching a written document. *See Boca Raton Sailing v. Scottsdale Ins. Co.*, No. 18-CV-81236, 2019 WL 7904805, at *2 (S.D. Fla. Mar. 18, 2019) ("[Plaintiffs] need not attach a disputed contract to a complaint in order to survive a motion to dismiss."); *Mirabal v. Bank of Am. Corp.*, No. 15-21838-CIV, 2015 WL 12817702, at *2 (S.D. Fla. Oct. 1, 2015) ("Plaintiff need not attach a copy of the contract in federal court.").

That being said, Defendants' claim of sovereign immunity in connection with the breach of contract count is well taken. As the motion points out, under Florida law an express contract is required to waive a municipality's immunity in a purported breach of contract claim. *See City of Fort Lauderdale v. Nichols*, 246 So. 3d 391, 392 (Fla. 4th DCA 2018) ("We have recognized that a municipality may waive the protections of sovereign immunity when it enters into an express contract."). But whether Plaintiffs can produce evidence that establishes the existence of an express written contract, to demonstratethat its terms were truly breached by Islamorada, is a question to be addressed at summary judgment, not at the motion to dismiss stage. Accordingly, Defendants' Motion to Dismiss Count IV should be DENIED.

### D.      *Implied Covenant of Good Faith and Fair Dealing (Count V)*

Plaintiffs allege in Count V a breach of the implied covenant of good faith and fair dealing by Islamorada. Defendants seek to dismiss this claim for the same reasons they moved to dismiss the breach of contract count above: (i) failure to attach a copy of the contract to the pleadings and (ii) failure to allege breach of a provision of the contract. As noted earlier, Defendants' claims are unpersuasive at this stage

15

of the case.

Florida contract law recognizes the implied covenant of good faith and fair dealing if it satisfies two conditions:

> Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract. This covenant is intended to protect the reasonable expectations of the contracting parties in light of their express agreement. However, there are two restrictions on causes of action for the breach of good faith and fair dealing. First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties. Second, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached.

*Southern Internet Systems. Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1127 (Fla. 4th DCA 2003) (quoting *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001)). So, while a breach of the implied covenant of good faith and fair dealing is not technically an independent cause of action, it is a theory of liability because it "attaches to the performance of a specific contractual obligation." *Centurion Air Cargo v. UPS Co.,* 420 F.3d 1146, 1151-52 (11th Cir. 2005).

Plaintiffs contend that Count V meets all the requirements to state a claim. We agree. The Complaint specifically states that access to the "[p]rivate Marina bathroom and showers" was provided for in the terms of the agreement, and that "Ms. Watts arbitrarily and illegally refused to provide Mrs. Facsina with the code required to access the Marina's handicapped bathroom and shower." [D.E. 1-2, at ¶¶ 11, 27]. And Defendant's failure to grant Ms. Facsina with access to these facilities, "unfairly frustrate[d] the purpose of the agreement entered between the parties and disappointed the Plaintiffs' expectations." *Id.* ¶ 92. These allegations

are sufficient to state a plausible claim in Count V and, as such, Defendants' Motion to Dismiss this count should be DENIED.

### E. *The Loss of Consortium Claim Should be Dismissed (Count VI)*

The last count in the Complaint is a loss of consortium claim raised by Mr. Kraska. Defendants move to dismiss this count because in the absence of a viable tort claim by Ms. Facsina, her husband's derivative claim of loss of consortium cannot stand. Defendants are absolutely correct on this score.

Under Florida law, the spouse of a person "injured as a proximate result of the negligence of another shall have a right of action against that same person for her loss of consortium." *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971). Moreover, this cause of action "is a derivative right and [the spouse] may recover only if [his] [wife] has a cause of action against the same defendant. This means that the tort-feasor was negligent and the [wife] was free from contributory negligence." *Id*. As discussed earlier, *see supra* Section B, Ms. Facsina cannot identify an independent duty of care necessary to sustain her negligence claim against Ms. Watts and, as such, her negligence claim is due to be dismissed. Consequently, her husband's derivative claim, too, fails as a matter of law. *See Stone v. United States*, 373 F.3d 1129, 1132 (11th Cir. 2004) ("Because the United States could not be found negligent as to Tiffany Stone, the district court did not err by holding that her parents' derivative loss of consortium claims likewise failed as a matter of law."); *Nelson v. City of Panama City, Fla.*, 176 F. Supp. 2d 1288, 1290 n. 1 (N.D. Fla. 2001), *rev'd sub nom. Nelson v. City of Panama City*, 64 F. App'x 742 (11th Cir. 2003) ("Under Florida common law, consortium claims are available to the spouse *of a tort victim* who suffers

17

physical injury and also to the spouse of a person damaged by at least some intentional torts.") (emphasis added). Plaintiffs failed to address this argument, and their Response is devoid of any allegations or governing authority providing otherwise.

Mr. Kraska also failed to provide this Court with any support regarding the viability his loss of consortium claim pursuant to his wife's discrimination counts. Considering that federal courts in this Circuit and others have held that discrimination or human rights statutes do not permit recovery for a loss of consortium, and that the undersigned has not found any governing authority providing otherwise, we find that Mr. Kraska's stand-alone loss of consortium claim fails. *See Cook v. Robert G. Waters, Inc.*, No. 96-1459-CIV-T-17E, 1996 WL 685842, at *1 (M.D. Fla. Nov. 13, 1996) ("loss of consortium claims have been held not to be derivative of an ADA claim or a Title VII claim*.*"); *Lorenc v. Be Free, Inc.*, 136 F. Supp. 2d 1 (D. Mass. 2001) (ADA does not support loss of consortium claim); *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393 (E.D. Pa. 2002) (no loss of consortium claim where underlying claim was brought under the ADA and state Human Rights statute); *Herman v. Coastal Corp.*, 348 N.J. Super. 1, 791 A.2d 238 (App. Div. 2002) (a claim for loss of consortium does not exist under the Law Against Discrimination Act); *Miller v. CBC Companies, Inc.*, 908 F. Supp. 1054, 1069 (D.N.H. 1995) (granting motion to dismiss consortium claims to the extent they derived from ADA and Title VII claims); *Mohamed v. Marriot Int'l, Inc.*, 905 F. Supp 141, 159 (S.D.N.Y. 1995) (granting motion to dismiss consortium claim because it could not attach to an ADA claim); *Doe v. R.R. Donnelley & Sons Co.*, 843 F. Supp. 1278, 1284

(S.D. Ind. 1994), *aff'd,* 42 F.3d 439 (7th Cir. 1994) (holding Title VII does not recognize a claim for loss of consortium).

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Counts III (negligence) and VI (loss of consortium) of the Second Amended Complaint [D.E. 1-2] should be **GRANTED with prejudice**. Defendants' motion to dismiss Counts I, II, IV, and V should be **DENIED.**

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 16th day of August, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge